Johnson, J.
The statute of 23 Philip & Mary,made of force by the act of 1712, (Pub. Laws, 59,) authorises any justice before whom any prisoner shall be brought on a charge of manslaughter or felony, to take his examination, and the information of those who bring him, of the. facts and circumstances thereof, and the same or so much thereof as shall be material to prove the felony, and within two days thereafter to reduce it to writing and certify it to the next general goal delivery ; and the examinations of witnesses, taken in conformity with this statute, have been uniformly, admitted in evidence against the prisoner, when they had been taken in the presence of the prisoner, and an opportunity afforded him of a cross-examination, if the deponent be dead at the time of the trial. Rex v. Fleming cited, 1 East, P. C. 440; Rex v. Paine, 1 Salk. 281; Webster’s case, Leach, 14; Buller N. P. 242. In the argument here I understand it to bo conceded that the deposition given in evidence was made on the application for a warrant to arrest the prisoner, and in his absence; and the case is narrowed down, to the question, whether it was admissible under such circumstances.
The statute does not prescribe any new rule, but simply provides for the examination of the accused and his accusers, leaving the use to be made of the examination, as it used at the common law to be admitted or rejected according to the rules of evidence. Generally, the viva voce examination of the witness in the presence of the party on trial is required, because it is the best evidence. The direct and cross examinations are the best means of eliciting the whole truth, and the manner of the witness is one of the tests by which to determine the degree of credit to which he is entitled ; but this is not always attainable, and what a deceased witness, or one who from other causes has become incapacitated to give evidence, has sworn on a former trial, is admitted on the principle that it is the best of which the case admits, provided, first, that the 'evidence was given in the regular course of a judicial proceeding; *609 secondly, that the party to be affected by it was a party to that proceeding ; thirdly, that he did or might have cross examined the witness : (Starkie’s Ev. part 2, page 261,) and it is upon the principle of this rule, that the deposition of a deceased witness, taken in pursuance of the statute, on the examination of one accused of felony, is admitted in evidence. The examination of the prisoner and his accusers, is a judicial proceeding au-thorised by the statute, for the purpose, in the first place, of enabling the magistrate to determine whether the circumstances furnish sufficient evidence to authorise the committal of the accused, and they are, secondly, certified to the sessions, to enable the prosecuting officer to judge of the propriety of proceeding with the prosecution; and, if the accused is present and has an opportunity of cross examining the witness, the depositions, according to the rule, are admissible in evidence. Thus far all the authorities agree, but there seems to be great diversity of opinion on the question whether the deposition of a deceased witness, taken in the absence of the accused, is or is not admissible on his trial. In The King v. Eriswell, 3 Term Rep. 707, the question arose whether the examination of a pauper, taken before two justices, relative to his settlement, and who became insane before an order for his removal was made, was admissible in evidence before two cither justices, on an application for an order for the removal of his family; and upon a full investigation of the authorities in reference to the question, the Court were divided. Buffer and Ashhurst, Justices, who maintain the affirmative, proceed on the ground that it was admissible as evidence taken in the course of a judicial proceeding, on which the justices might have founded an order for the removal of the pauper, and, as such, was admisssible whether the party to be affected was present or not, and whether he had or had not an opportunity of cross-examining the witness. But Lord Kenyon and Mr. Justice Grose, who support the negative, maintain, I think, with great force, that its admissibility is not to be resolved alone by the circumstance of its having been made in the course of a judicial proceeding, but that it must appear to have been made in a proceeding between the same parties, and when each had an opportunity of cross examining the witness, otherwise it is res inter alias acta, and not to be received. In The King v. Smith, 1 Holt, N. P. C. 614, reported also in 2 Starkie, 208, (see 3 Eng. Com. Law Rep. 200 and 316,) it seems to be taken for granted, that on the trial of an indictment for murder, the deposition of the deceased, taken in the absence of the prisoner, was not admissible. There the whole deposition, except the three last lines, had been written in the absence of the prisoner, but the whole was deliberately read *610 over t0 ^18 íloccELScd in the presence of the prisoner, and he was asked if he chose to put any questions to him, but declined to do so, and Chief Baron Richards admitted the evidence, on the ground that the prisoner had an opportunity of cross examining the deceased; admitting, however, most distinctly, that according to established rule, it would not have been admissible if the prisoner had not been present at the examination ; and he was in so much doubt whether it was admissible, even under these circumstances, that he reserved the question for the consideration of the whole Court, when one of the judges dissenting, his judgement was approved ; and I take it for granted, that if the examination of the deceased, taken in the absence of the prisoner, had been admissible, the question of its admissibility under these circumstances never could have arisen.
The case of the King v. Paine, 1 Salk. 281, is authority at least for the general position that the ex parte examination of a witness, although taken in the course of a judicial proceeding,.is not admissible in evidence, although the witness be dead, and 1 have before remarked that the statute does not prescribe any new rule of evidence. It provides simply for the examination of the prisoner and his accusers, for the purpose, as I have supposed, of enabling the magistrate to determine whether the prisoner ought or ought not to be committed: and to enable the prosecuting officer to judge of the propriety of proceeding with the prosecution; and in the King v. Eriswell, Lord Kenyon supposes that it was intended to be preserved as a test of the consistency of the witnesses, so that the statute will have had its full and legitimate operation without rendering the depositions competent evidence on the trial; and it never will be inferred that the legislature intended this indirectly to break down one of the most important rules of evidence. Depositions taken upon a coroner’s inquest in pursuance of the statute of 1 and 2 Phil. & Mary, Ch. 13, seem generally to have been admitted as an exception to this rule on the ground of the publicity and importance of the proceeding ; but I incline to think with Mr. Starkie, that even this is mot warranted, and that it will deserve grave consideration when the question arises, whether it ought to be supported, Starkie Ev. part 2, p. 492. The rules of evidence, as Lord Kenyon observes in the case before cited, do not depend on technical refinement, but on good sense, and in their application we must constantly keep in view their practical effect and operation, and I venture to affirm that no rule would be productive of more mischief than that which would allow the ex parte depositions of witnesses, and especially in criminal oases, to be admitted in evidence. Charges for criminal offen- *611 ees are most generally made by the party injured, and under the influence of the excitement incident to the wrong done, and however much inclined the witness may be to speak the truth, and the magistrate to do his duty in taking the examination, his evidence will receive a'coloring in proportion to the degree of excitement under which'he labors, which the judgement may detect, but which it is impossible exactly to describe, and we know too how necessary a cross examination is to elicit the whole truth from even a willing witness; and to admit such evidence without the means of applying the ordinary tests, would put in jeopardy the dearest interests of the community. On principle, therefore, as well as authority, I think the evidence in this case was, inadmissible.
Motion granted.
Harpek, J. and Evans, J. (sitting for O’Neaie, J.) concurred.